**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1135
_____


ZONG LUAN OUYANG,
a/k/ Philip Chi Ho Mak,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A097-332-148)
Immigration Judge: Annie S. Garcy
_____


Submitted Pursuant to Third Circuit LAR 34.1(a)
August 15, 2012

Before: SCIRICA, CHAGARES and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 20, 2012)


_____

OPINION
_____


1

PER CURIAM

Zong Luan Ouyang ("Ouyang") petitions for review of the Board of Immigration Appeals' final order of removal. For the reasons that follow, we will deny the petition for review.

Ouyang, a native and citizen of China, was placed in removal proceedings in March, 2005 after being denied admission into the United States. An Immigration Judge in Chicago sustained three charges against him, including one under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an alien who attempted to enter the United States without a valid entry document. Venue eventually was changed to Newark, New Jersey, and Ouyang applied for asylum, withholding of removal, and protection under the Convention Against Torture, claiming persecution on the basis of his opposition to China's coercive population control policies. After a merits hearing on March 29, 2006, the Immigration Judge denied relief, and ordered Ouyang removed to China. On July 24, 2007, the Board of Immigration Appeals affirmed and dismissed his appeal. Ouyang did not petition for review of this decision.

On August 8, 2011, Ouyang filed a motion to reopen removal proceedings with the Board in order to re-apply for asylum. He argued that he was exempt from the time requirement for filing a motion to reopen in light of "changed circumstances, " that is, his conversion to Christianity and baptism on January 3, 2011. Ouyang asserted that he now attends a Methodist church in Brooklyn, and he claimed in his motion to reopen that he would be persecuted in China on the basis of his religious beliefs because he would find it necessary to attend an underground church. Ouyang was born in Fujian Province. He

2

asserted that government-sanctioned churches are "merely mouthpieces for the Chinese Communist Party," A.R. 35, and conditions have worsened for Christians in China since the time of his merits hearing in 2006. Ouyang submitted evidence of the sincerity of his beliefs. He also submitted the 2010 State Department International Religious Freedom Report, and he submitted a number of articles as evidence of persecution by the Chinese government of Christians who attend unregistered churches.

On December 21, 2011, the Board denied the motion to reopen as untimely filed. The Board concluded that Ouyang failed to show a material change in conditions in China sufficient to warrant an exemption to the timeliness requirement. The Board specifically observed that the 2010 International Religious Freedom Report states that the Chinese government continues to engage in systematic and egregious violations of freedom of religion, but concluded that this was a continuation of a longstanding practice and not a change for purposes of reopening. Enforcement also varied widely by region, and Ouyang had no support for his assertion that enforcement efforts in Fujian Province rose to the level of persecution. The Board also noted that there was no evidence that Chinese authorities were aware of Ouyang's conversion, likely to become aware of it, or likely to have any interest in harming him because of it. Therefore, he was not prima facie eligible for asylum. The Board further declined to exercise its *sua sponte* authority to reopen proceedings, 8 C.F.R. § 1003.2(a).

Ouyang has timely petitioned for review. We have jurisdiction under 8 U.S.C. § 1252(a), (b)(1), except that we lack jurisdiction to review the Board's decision declining to exercise its *sua sponte* authority to reopen proceedings. See Calle-Vujiles v. Ashcroft,

3

320 F.3d 472, 475 (3d Cir. 2003). Ouyang's motion in this Court to stay removal previously was denied.

We will deny the petition for review. We review the Board's denial of a motion to reopen for an abuse of discretion. Immigration & Naturalization Serv. v. Abudu, 485 U.S. 94, 105 (1988). Under this deferential standard of review, we will not overturn the Board's decision unless it is arbitrary, irrational, or contrary to the law. See Guo v. Ashcroft, 386 F. 3d 556, 562 (3d Cir. 2004). We uphold the Board's factual determinations underlying the denial of the motion to reopen if they are "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Zheng v. Att'y Gen. of U.S., 549 F.3d 260, 266 (3d Cir. 2008) (quoting Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). Put another way, such determinations must be upheld unless the evidence presented would compel a reasonable factfinder to reach a contrary result. 8 U.S.C. § 1252(b)(4)(B); Guo, 386 F.3d at 561.

A motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R.§ 1003.2(c)(2). Ouyang's motion was filed almost 4 years late. However, the time limitation for a motion to reopen does not apply where the alien seeks to "apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing," id. at 1003. 2(c)(3)(ii). See also 8 U.S.C. § 1229a(c)(7)(C)(ii). An alien may file a successive asylum application based on changed

4

*personal* circumstances *or* changed country conditions, pursuant to 8 U.S.C. § 1158(a)(2)(D), at any time during proceedings before the entry of a final order of removal, or within the 90-day deadline for a motion to reopen. Outside of those circumstances, changed country conditions under 8 U.S.C. § 1229a(c)(7)(C)(ii) must be shown. Liu v. Att'y Gen. of U.S., 555 F.3d 145, 150-52 (3d Cir. 2009).

The Board's findings concerning Ouyang's country conditions evidence are supported by substantial evidence, Zheng, 549 F.3d at 266; Elias-Zacarias, 502 U.S. at 48. Thus, the Board did not abuse its discretion in determining that Ouyang did not qualify for the changed country conditions exception to the time requirement for filing a motion to reopen, see Abudu, 485 U.S. at 105; Guo, 386 F.3d at 562. Ouyang was required to show that country conditions have worsened since the time of his hearing before the Immigration Judge in 2006. 8 C.F.R. § 1003.2(c)(3)(ii). Ouyang's evidence does not show a material change in conditions in China since that date. For example, the 2010 International Religious Freedom Report indicates that Chinese officials continue to scrutinize and in some cases harass underground churches, but there is no evidence that China's history of official repression of non-government sponsored Christian churches has worsened since Ouyang's removal hearing in 2006. Moreover, Ouyang's recent conversion to Christianity merely establishes that his personal circumstances have changed. Changed personal circumstances are insufficient to excuse an alien from the 90-day time limit on a motion to reopen. Liu, 555 F.3d at 150-52.

In his brief on appeal, Ouyang contends that the Board failed to consider all of his evidence, and failed to give sufficient weight to his favorable evidence. (Petitioner's

5

Brief, at 13.) Specifically, he argues that the Board failed to consider: (1) the Annual Report of the United States Commission on International Religious Freedom from May 2010; (2) an article titled "China: Forced Outdoors" from persecution.com; (3) an article titled "China: Persecution Worsening" from persecution.com; (4) a New York Times article titled "Chinese Christians Barred from Conference," and (5) an article from The Christian Post titled "Watchdog Sees Rise in Reported Persecution Cases in China." See id. These other items, Ouyang asserts, show a worsening of conditions in China with respect to religious persecution in 2008, 2009, and 2010. See id. at 13-16.

In Zheng, 549 F.3d 260, we held that the Board failed adequately to consider a Chinese national's evidence regarding changed circumstances in China. In Ouyang's case, the Board noted that various articles and media reports had been submitted but criticized Ouyang for failing to discuss the relevance of several of the items or for including only portions of the items, thus making it difficult to evaluate them. The Board noted Ouyang's citation to his Tabs W, AA, CC, and DD, but held that a general reference to a document is insufficient to explain the materiality of it. Moreover, the 2010 Report, which Ouyang also submitted, showed only a continuation of China's repression of religion. The Board further noted that Tabs Z, AA, CC, and DD did not relate specifically to Fujian province.

We have reviewed Ouyang's motion to reopen and we are satisfied that the Board considered all of his evidence. As to the Board's weighing of the evidence in his case, we decide only whether a reasonable factfinder would be compelled to reach a contrary result. 8 U.S.C. § 1252(b)(4)(B); Guo, 386 F.3d at 561. On this administrative record,

6

and even considering the specific items Ouyang has identified in his brief, we conclude that no reasonable factfinder would be compelled to find that there has been a material worsening since 2006 of China's repression of unregistered Christian churches. Accordingly, the Board's determination that Ouyang's motion to reopen was untimely filed was not an abuse of discretion.[1]

For the foregoing reasons, we will deny the petition for review.

---

[1] Because the motion to reopen was untimely filed, we find it unnecessary to reach the Board's alternate determination that Ouyang failed to establish prima facie eligibility for asylum.